Robert A. FALISE; Louis Klein, Jr.; Frank Macchiarola; and Christian E. Markety, Jr. as Trustees, Plaintiffs,

v.

The AMERICAN TOBACCO COMPANY; R.J. Reynolds Tobacco Company; B.A.T. Industries, PLC; Brown & Williamson Tobacco Corporation; Philip Morris Incorporated; Liggett Group, Inc.; and Lorillard Tobacco Company, Defendants.

No. CV 99–7392.

United States District Court, E.D. New York.

April 3, 2000.

James L. Stengel, Peter Bicks, Orrick, Herrington & Sutcliffe, LLP, New York City, Steven Kazan, Kazan, McClain, Edises, Simon & Abrams, Oakland, CA, Ronald Motley, Ness, Motley, Loadholt, Richardson & Poole, Mt. Pleasant, SC, for plaintiffs.

Thomas D. Schroeder, Bonnie Kay Donahue, Womble Carlyle Sandridge & Rice, PLLC, Winston–Salem, NC, R. Dal Burton, Atlanta, GA, for R.J. Reynolds Tobacco Company, defendant.

Alan Mansfield, Stephen L. Saxl, Greenburg Traurig, New York City, for Lorillard Tobacco Company, Philip Morris Incorporated and R.J. Reynolds Tobacco Company and Liaison Counsel, defendants.

David M. Bernick, James Munson, Deirdre A. Fox, Kirkland & Ellis, Chicago, IL, for The American Tobacco Company and Brown & Williamson Tobacco Corporation, individually as successor by merger to the American Tobacco Company, defendants.

Joseph M. McLaughlin, Jr., Adam Stein, Simpson Thacher & Bartlett, New York City, for B.A.T. Industries, defendant.

Gary Long, Gay Tedder, Terrence Sexton, Andrew Carpenter, Shook, Hardy & Bacon LLP, Kansas City, MO, for Lorillard Tobacco Company and Philip Morris Incorporated, defendants.

Dan Webb, Jeffrey M. Wagner, Winston & Strawn, Chicago, IL, for Philip Morris Incorporated, defendant.

Alan Kraus, Keith Weingold, Riker Danzig Scherer Hyland & Perretti, Morristown, NJ.

## PRELIMINARY ORDERS

WEINSTEIN, Senior District Judge.

Plaintiffs, trustees of a Trust established in 1988 as a result of the bankruptcy of the Johns–Manville Corporation, seek recovery against the major tobacco product manufacturers and related entities ("Tobacco") for their alleged role in contributing to asbestos-related injuries of the Trust's Claimants. The initial case, filed on December 31, 1997 ("*Falise I*"), was dismissed for lack of subject matter jurisdiction on November 2, 1999. *See Falise v. American Tobacco Co.*, 241 B.R. 48 (E.D.N.Y.1999). This case (*Falise II*) was filed on November 11, 1999, predicated on the same set of facts as *Falise I,* but asserting section 1964(c) of title 18 of the United States Code, the Racketeer Influenced and Corrupt Organization Act ("RICO"), as a basis for subject matter jurisdiction.

Plaintiffs have advanced a number of theories supporting a cause-of-action against the defendants. Four theories are based on alleged racketeering activity. *See* 18 U.S.C. § 1964(c).

1) Tobacco engaged in a fraudulent scheme of misinformation *directed at asbestos workers* (and the population at large) to encourage asbestos workers to smoke (and not to cease smoking), thus causing them to suffer more severe asbestos-related injuries than they otherwise would have, and forcing the Trust to pay large sums from its fixed and limited resources to smokers, adversely affecting its ability to carry out its fiduciary responsibility to present and future Claimants for whom the Trust will have less funds available to compensate under its matrix payment plan, *see id.* § 1962(c) ("RICO Direct Payment Action");

2) Tobacco engaged in a fraudulent scheme of misinformation *directed at the Trust* to cover-up or minimize its contributing liability for the Claimants' injuries, causing the Trust to erroneously assume Tobacco's share of the Claimants' injuries and thus to settle claims for a greater percentage of damages than that for which the Trust is responsible, *see id.* § 1962(c) ("RICO Settlement Action");

3) Tobacco engaged in a fraudulent scheme of misinformation *directed at the Trust* to cover-up or minimize its contributing liability to the Claimants' injuries, causing the Trust not to implead Tobacco in asbestos-injury litigations, *see id.* § 1962(c) ("RICO Litigation Action");

4) Tobacco invested racketeering income and proceeds from a RICO enterprise *directed at the population generally* to fund a scheme (*see supra* ¶ 1) to cause the Trust to make greater payments than it otherwise would have, *see id.* § 1962(a) ("RICO Investment Action").

A fifth theory is based on fraud under state common-law. Plaintiffs contend Tobacco engaged in a fraudulent scheme with the specific intent to mislead asbestos-related entities, including the Trust, into compensating Claimants for more serious asbestos-related injuries caused by a tobacco-smoke and asbestos synergy than would have been caused by asbestos alone ("State Fraud Action").

Finally, plaintiffs have pled state law claims of unjust enrichment, restitution, contribution, indemnification, and unfair competition.

Defendants have moved for summary judgment on all claims.

The unique character of the massive, nationwide, longstanding, and on-going fraudulent schemes alleged, and the enormous damages claimed to have resulted, require flexibility in approaching the novel factual and legal issues presented by this extraordinary case. While the court remains skeptical of plaintiffs' ability to support the allegations, a sufficient showing has been made—subject to a *Daubert* hearing on the validity of the proposed statistical models relied upon by plaintiffs—to warrant a jury trial.

It is ordered:

I    Summary judgment is denied with respect to the RICO Direct Payment Action. *See supra* ¶ 1. Defendants' contentions that the statute of limitations warrants dismissal and that sufficient causation is lacking cannot be decided at this stage of the litigation. They present issues of fact appropriate for a jury. With respect to the limitations period, the plaintiffs may seek recovery of payments for claims filed with the Trust after November 11, 1995, four years before the filing of the complaint in *Falise II.* The filing of a claim with the Trust is the date on which that particular injury to the Trust accrued for purposes of the statue of limitations. Plaintiffs may seek damages for projected claims to be filed before January 1, 2050.

II    Summary judgment is granted with respect to the RICO Settlement Action. *See supra* ¶ 2.

III    Summary judgment is granted with respect to the RICO Litigation Action. *See supra* ¶ 3.

IV    Summary judgment is denied with respect to the RICO Investment Action. *See supra* ¶ 4.

V    Defendants' motion for summary judgment based on the State Fraud Action is denied. New York substantive law governs. With respect to the limitations period, plaintiffs may seek recovery for payment of claims filed after December 31, 1991, six years before the filing of *Falise I.* Plaintiffs may also seek damages

for projected claims to be filed before January 1, 2050.

VI Defendants' motion to strike allegations relating to lobbying, litigation, and public relations under the *Noerr–Pennington* Doctrine is denied with leave to renew during trial, or through in limine motions, as warranted by particular evidence or testimony.

VII Defendants' motion for summary judgment with respect to plaintiffs' demand for disgorgement of profits is denied. *See id.* § 1964(c). Leave to renew before or during an equity trial before the court following the jury trial is allowed.

VIII Defendants' motion to dismiss based on preemption by the Federal Cigarette Labeling and Advertising Act, 15 U.S.C. § 1331 et seq., is denied.

IX Plaintiffs' remaining state law claims are stayed pending trial on the RICO and State Fraud theories. Defendants' motions with respect to these claims are denied with leave to renew upon lifting of the stay.

X The parties shall arrange for a *Daubert* hearing on the proposed expert witnesses and the statistical models on April 18, 2000.

XI Trial will begin on June 5, 2000, with selection of the jury. If any party wishes a questionnaire to be used in jury selection, the court will approve the questions and decide any disputes as to form.

XII The trial shall take place in three phases: a combined liability and compensatory damages phase; then, if warranted, a punitive damages phase; and finally, if warranted, a disgorgement of profits phase.

XIII The parties shall endeavor to stipulate on the admissibility of evidence. They shall premark all documents, list all witnesses, and argue matters in limine to the end that the trial be simplified.

XIV Appeals of the magistrate judge's orders shall be made within five business days of the order's entry in view of the imminence of trial.

XV Final trial briefs and proposed jury charges shall be filed no later than May 30, 2000. The proposed jury charges should be submitted on disk in Word Perfect 8.0 format.

A memorandum explaining these conclusions will follow as work permits.

SO ORDERED